WILLIAM ROSE,
an individual,

      Plaintiff,

vs.                     **CASE NO: 2:23-cv-00022-JLB-KCD**

CELLULAR TOUCH WIRELESS, INC.,
a Florida Corporation,

      Defendant.

_____/

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

Defendant, CELLULAR TOUCH WIRELESS, INC., by and through the undersigned counsel and pursuant to Fed.R.Civ.P. 56, hereby moves for final summary judgment against Plaintiff as to all counts of Plaintiff's Complaint, and in support thereof states as follows:

## SUMMARY OF THE ARGUMENT

Plaintiff has pleaded seven causes of action based on its belief that Defendant, a cell phone retailer who owed a store located in a strip mall in Fort Meyers, FL, bears sole responsibility for an alleged SIM card "swap," which allegedly lead to the theft of Plaintiff's identifying information, which then allegedly lead to the theft of Plaintiff's cryptocurrency on or about August 14, 2021 while Plaintiff was in Ames, Iowa (the "Incident").

Plaintiff first posits that Defendant's retail employees aided and abetted a "John Doe" to provide access to Plaintiff's identifying information that would allow the "John Doe" to access Plaintiff's cryptocurrency assets. Plaintiff has presented to this Court absolutely no evidence of same as none exists and all evidence shows that Defendant's employees were not even in the retail store at the time of Plaintiff's alleged T-Mobile account breach.

Plaintiff then switched its theory to a nebulous idea that Plaintiff's account with T-Mobile, Inc. (not a party to this action) was compromised via remote access to T-Mobile, Inc.'s software through Defendant's storefront computer. Again, Plaintiff has not provided any evidence supporting Defendant's responsibility for same.

What the record evidence conclusively demonstrates is that the only two parties that could potentially bear responsibility for Plaintiff's alleged theft of cryptocurrency assets, T-Mobile, Inc. and the unknown third-party hacker that infiltrated T-Mobile's network, are not parties to this action.

Assigning any responsibility to a cell phone retailer whose employees were not even on the retail premises at the time of the alleged security breach is not supported by the evidence on record. Plaintiff's theory of the case is just that – a theory, unsupported by evidence. Defendant is respectfully requesting final summary judgment in favor of Defendant as to all of Plaintiff's causes of action.

## UNDISPUTED MATERIAL FACTS

Defendant cites to the affidavit of Raslan "Ross" Shada, Corporate Representative of Cellular Touch Wireless, Inc., attached as Exhibit "1." Defendant cites to the deposition transcript of Raslan "Ross" Shada as Exhibit "2." Defendant cites to the deposition transcript of Plaintiff, William Rose, attached as Exhibit "3."

1.  Mr. Shada is the Vice President of Administration for Defendant. Shada Dep. 28:23-25; Shada Aff. ¶ 1.

2.  The store that was allegedly involved in the SIM card swap was located in Fort Meyers, Florida and owed by Defendant. Shada Dep. 34:18-20; Shada Aff. ¶ 5, 7.

3.  Mr. Shada has knowledge of the "SIM-swapping" incident involving William Rose on or about August 31, 2021 while Mr. Rose was traveling in Ames, Iowa (the "Incident"). Shada Aff. ¶ 6.

4.  A SIM card (Subscriber Identify Module) card is a small plastic chip that allows a mobile device to connect to a cellular network and communicate with a mobile services provider. Shada Aff. ¶ 8.

5.  The T-Mobile, Inc. operator ID for the Fort Meyers store was 42002008. Shada Dep. 35:12-14.

6.  The two computers for the Fort Meyers store and all of the software

contained on those computers were sourced from T-Mobile. Shada Dep. 35:23-36:1; 36:15-16.

7. In August of 2021, Defendant took security seriously. Shada Dep. 33:19-21; 54:14-18.

8. In August of 2021, Defendant had robust security. Shada Dep. 33:22-23; 54:8-10.

9. Defendant's employees, Octavio and Clarabel, were educated by Defendant on Customer Proprietary Network Information ("CPNI") and this was part of their onboarding and T-Mobile training. Shada Dep. 49:11-19.

10. Octavio and Clarabel were the only two employees working at Defendant's Fort Meyers' store. Shada Dep. 37:11-17.

11. William Rose' T-Mobile transaction record from his customer account shows that his SIM card was swapped on August 13, 2021 at 21:31 CST, which is 10:31 P.M. EST. Shada Aff. ¶ 9. A true and correct copy of Mr. Rose' T-Mobile transaction record from the T-Mobile EDGE system is attached to the affidavit of Mr. Shada as Exhibit "A."

12. The SIM card number search in Cellular Touch Wireless, Inc. inventory shows that the SIM card at issue did not come from

Defendant's SIM card inventory.  Shada Aff. ¶ 10.  A true and correct copy of the search results from Defendant's inventory for Mr. Rose' SIM card number is attached to the affidavit of Mr. Shada as Exhibit "B."

13. The time clock for Defendant's two employees (Claribel Gonzalez and Octavio Alvarado) at the Fort Meyers Store on August 13, 2021 shows that both employees were clocked out of the Fort Meyers Store by 8:34 P.M. EST.  Shada Aff. ¶ 11.  A true and correct copy of the record for Cellular Touch Wireless, Inc.'s time clock for both employees is attached to the affidavit of Mr. Shada as Exhibit "C."

14. At 8:34 P.M. on August 13, 2021, the Fort Meyers Store was closed, the alarm was armed, and Cellular Touch Wireless, Inc. did not receive any report of the alarm being set off or disarmed.  Shada Aff. ¶ 12.  A true and correct copy of the record for the Fort Meyers Store alarm is attached to the affidavit of Mr. Shada as Exhibit "D."

15. The Fort Meyers' store was using T-Mobile's EDGE software, which did not have specific logins for individual employees.  Shada Dep. 38:24-39-4.

16. The EDGE system is a program that is maintained and operated by T-Mobile.  Cellular Touch Wireless, Inc. has no control over the

operation and maintenance of T-Mobile's EDGE system. Shada Aff. ¶ 13.

17. The T-Mobile EDGE software sign-in was based on the store (door) ID, which was 42002008. Shada Dep. 39:10-21; 50:22-51:1.

18. There was no remote login capacity for the computers at the Fort Meyers store around the time of the Incident. Shada Dep. 39:10-21.

19. Defendant never used default passwords that were provided by T-Mobile for their in-store computer systems. Shada Dep. 44:3-7.

20. An individual could not login remotely to the T-Mobile EDGE software website utilizing a store password remotely because of the in-store location certificates. Shada Dep. 46:15-47:2.

21. An individual could not login to a specific store's EDGE software from a different location based on the requirement of presenting the in-store certificate. Shada Dep. 47:13-15; 56:10-15.

22. Whenever an in-store employee of Defendant called T-Mobile for anything EDGE software related, T-Mobile would ask for the EDGE certificate. Shada Dep. 47:23-48:1.

23. In August of 2021, an EDGE certificate created a geo-regional block that did not allow anybody to login to a specific in-store location even if they were at a different Metro by T-Mobile store. Shada Dep. 48:11-

22.

24. There was no ability to "remote in" to an in-store computer unless a person was in the store physically. Shada Dep. 49:22-25; 55:23-56:3.

25. The Fort Meyers' store in question was closed on April 13, 2021 at approximately 8:45 p.m. Shada Dep. 48:18-22.

26. The T-Mobile operator ID 42002008 was not used physically at the Fort Meyers' store location and Plaintiff agrees that it appears that it was not. Shada Dep. 49:1-14.

27. Plaintiff does not know who actually accessed his cell phone's SIM card. Rose Dep. 84:8-10.

28. Plaintiff does not know who actually accessed his cryptocurrency accounts. Rose Dep. 84:11-13.

29. Plaintiff does not know if the same person who accessed his SIM card also accessed his cryptocurrency accounts. Rose Dep. 84:14-17.

30. Plaintiff does not know who the person is that ended up benefiting from his cryptocurrency that was stolen. Rose Dep. 84:18-21.

31. The detectives that Plaintiff worked with after reporting the alleged theft of his cryptocurrency could not identify the individual who stole the cryptocurrency. Rose Dep. 86:3-8.

32. Plaintiff read on the internet that there was a data breach through T-

Mobile on the same days that his cryptocurrency loss occurred. Rose Dep. 90:21-25.

33. Mr. Shada has seen no evidence indicating that any employee and/or agent of Cellular Touch Wireless, Inc. was involved in the Incident. Shada Aff. ¶ 14.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56. "A genuine issue of material fact exists where the dispute is "over facts that might affect the outcome of the suit under the governing law" and where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Code Revision Comm'n for Gen. Assembly of Georgia v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1235 (11th Cir. 2018); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; rather, the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1261 (11th Cir. 2000); *Matsushita Elec. Indus. Co.*, 475 U.S. at 574. The failure to prove an essential element necessarily renders all other facts

immaterial and requires the court to grant the motion for summary judgment. *Acosta v. Campbell*, 309 Fed. Appx. 315, 318 (11th Cir. 2009). To oppose summary judgment, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

As such, the trial court functions as a gatekeeper and "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250; *see also Boyle v. City of Pell*, 866 F.3d 1280, 1288 (11th Cir. 2017) (quoting *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2004)). The non-moving party "must present more than a mere scintilla of evidence supporting his position and must make a sufficient showing that a jury could reasonably find in his favor." *Clement v. McCarley*, 708 F. App'x 585, 589 (11th Cir. 2017).

## MEMORANDUM OF LAW

I. **Summary Judgment is Appropriate for Count I – Breach of Federal Communications Act Because Defendant is Not a "Telecommunications Carrier" and Because Defendant Neither Divulged Information to Hackers Nor Failed to Follow Security Procedures**

Plaintiff cannot establish the necessary elements of a violation of the Federal Communications Act as Defendant is not a Telecommunications Carrier as contemplated under the act. Moreover, Plaintiff has no evidence that

Defendant either divulged any information to "hackers" or failed to follow security procedures.

First, Count I of Plaintiff's Complaint is based on an alleged violation of the Federal Communications Act, 47 U.S.C. §§206, 222 and is based upon a theory that Defendant, as an agent of T-Mobile, Inc. under 47 U.S.C §217, constitutes a "common carrier" as defined by 47 U.S.C. §153(11) as well as a telecommunications carrier as defined by 47 U.S.C. §153(51).

A "common carrier" is defined under the Federal Communications Act as follows:

> The term "common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier.

47 U.S.C. §153(11).

In contrast, a "telecommunications carrier" is separately defined under the Federal Communications Act as follows:

> The term "telecommunications carrier" means any provider of telecommunications services, except that such term does not include aggregators of telecommunications services (as defined in section 222 of this title). **A telecommunications carrier shall be treated as a common carrier under this chapter only to the extent that it is engaged in providing**

> **telecommunication services**, except that the Commission shall determined whether the provision of fixed and mobile satellite service shall be treated as common carriage.

47 U.S.C. §153(51) (emphasis added).

The term "telecommunications service" is defined under the Federal Communications Act as follows:

> The term "telecommunications service" means the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used.

47 U.S.C. §153(53).

The term "telecommunications" is defined under the Federal Communications Act as follows:

> The term "telecommunications" means the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received.

47 U.S.C. §153(50).

A "telecommunications carrier" is only treated as a common carrier under the Federal Communications Act "to the extent that it is engaged in providing telecommunication services." 47 U.S.C. §153(51). Telecommunication services involve offering telecommunication for a fee directly to the public. 47 U.S.C. §153(53). Telecommunications means the transmission of information

of the user's choosing without change in the form or content of the information. 47 U.S.C. §153(50).

When Congress enacts a definition of a term, the statutory definition controls over definitions in general dictionaries. *Robinson v. C.I.R.*, 119 T.C. 44, 56 (2002). Every one of the aforementioned definitions perfectly describes the business of T-Mobile, Inc., who is not a party to this lawsuit. As the undisputed facts clearly demonstrate, Defendant is a cell phone retailer that owns several cell phone retail stores, the one at issue being located in a strip mall in Fort Meyers, Florida.

Defendant is not a "telecommunications carrier" that offers telecommunications ("the transmission, between or among points specified by the user, of information of the user's choosing") for a fee directly to the public. A person who purchases a phone from Defendant does not connect to the "Cellular Touch Wireless Inc." network for telecommunication purposes. Rather, a person who purchases a phone from Defendant may connect to the T-Mobile, Inc. common carrier network for telecommunications.

Section 222(a) and (c)(1) of the FCA speak specifically to "telecommunication carriers," not "common carriers" and, by definition, Defendant, a cell-phone retailer, is not a telecommunication carrier.

Second, Plaintiff has provided no evidence demonstrating that Defendant

either failed to protect the confidentiality of proprietary information of customers or that Defendant allowed for unauthorized access to customer proprietary network information either in its provision of telecommunications services or in services necessary in the provision of telecommunication services as required for a violation of either 47 U.S.C. §222(a) and (c)(1).

In fact, the record evidence clearly demonstrates the exact opposite - Defendant took security seriously and had robust security. Defendant's employees were educated by Defendant on CPNI and the importance of safeguarding same. There is no evidence in the record that Defendant's security protocols were insufficient or failed. Once again, both of the computers at the Fort Meyers' store were sourced from T-Mobile and contained T-Mobile's software. Plaintiff readily admits that there was a data breach through T-Mobile – not a data breach of Defendant – on the same days that his cryptocurrency loss occurred.

Defendant is not a telecommunications carrier under the FCA. Even if it were (it is not), Defendant still cannot establish Defendant's failure to protect customer CPNI or that it was Defendant's failure of security that allowed for unauthorized access to CPNI. As Defendant's cause of action does not satisfy the statutory definitions under the FCA for a violation or that any violation occurred based on the record evidence, summary judgment in favor of

Defendant as Count I is justified and appropriate.

**II.** **Summary Judgment is Appropriate for Count II and III As to The CFAA Because There is No Record Evidence that Defendant Knowingly and With an Intent to Defraud Trafficked in Plaintiff's Passwords or CPNI**

For the sake of brevity, Defendant will address Count II and III of Plaintiff's Complaint together as both deal with the Computer Fraud and Abuse Act ("CFAA"). The record clearly demonstrates that neither Defendant nor its agents or employees meet the requisite scienter requirement under either section of the Computer Fraud and Abuse Act ("CFAA").

The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), states as follows:

> Whoever **intentionally** access a computer without authorization or exceeds authorized access, and thereby obtains…
>
> (C) information from any protected computer;

18 U.S.C. §1030(a)(2)(C) (emphasis added).

Similarly, 18 U.S.C. § 1030(a)(4) states:

> Whoever **knowingly and with intent to defraud**, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such is not more than $5,000 in any 1-year period;

18 U.S.C. §1030(a)(4) (emphasis added).

Finally, 18 U.S.C. § 1030(a)(6) states:

> **Whoever knowingly and with intent to defraud** traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if –
>
> (A)    such trafficking affects interstate or foreign commerce; or
>
> (B)    such computer is used by or for the Government of the United States;

18 U.S.C. §1030(a)(6) (emphasis added).

Alleged violations of 18 U.S.C. §§ 1030(a)(2)(C) and 1030(a)(4) comprise the basis of Count II of Plaintiff's Complaint. A violation of 18 U.S.C. §1030(a)(6) forms the basis of Count III of Plaintiff's Complaint. Interestingly, none of the sub-parts of 18 U.S.C. § 1030 provide a remedy. This is because a violation of any of the aforementioned parts "**shall be punished as provided in subsection (c) of this section.**" 18 U.S.C. 1030(a) (2021) (emphasis added).

Subsection (c) of 18 U.S.C. § 1030 provides for a litany of *criminal* penalties associated with a violation of subsection 18 U.S.C. § 1030(a). This is based on the scienter requirement of the statute (i.e. intentionally, knowingly and with intent to defraud).

When it comes to statutes that criminalize violations that regulate what can otherwise be innocent conduct, it is not enough that the defendant engaged

in action that the law prohibits. *United States v. Singer*, 963 F.3d 1144, 1157 (11th Cir. 2020). Rather, a court must construe the statute to satisfy the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Id.* (citing *Rehaif v. United States*, 588 U.S. 225, 228-29 (2019).

The record evidence demonstrates that Fort Meyers' store in question was closed on April 31, 2021 at approximately 8:45 p.m. The evidence demonstrates that Plaintiff does not know who actually accessed his cell phone SIM card. Plaintiff does not know who accessed his cryptocurrency accounts. Plaintiff does not know if the same person who accessed his SIM card also accessed his cryptocurrency accounts or benefited from the cryptocurrency allegedly stolen. The detectives that worked with Plaintiff could not identify the individual who stole Plaintiff's cryptocurrency.

Plaintiff presents absolutely no evidence whatsoever that either Defendant or its employees intentionally accessed a protected computer as required by 18 U.S.C. §§ 1030(a)(2)(C). Plaintiff presents absolutely no evidence whatsoever that either Defendant or its employees knowingly and with intent to defraud accessed a protected computer without authorization and obtained anything of value as required by U.S.C. §§ 1030(a)(4). Plaintiff presents absolutely no

evidence whatsoever that either Defendant or its employees knowingly and with intent to defraud traffics in passwords or any information in which a computer may be accessed without authorization as required by 18 U.S.C. §1030(a)(6).

As Plaintiff has presented no evidence of Defendant's and/or defendant's employees intentional or knowing involvement in Plaintiff's alleged cryptocurrency theft, Defendant cannot satisfy the requisite elements necessary to demonstrate a violation of the Computer Fraud and Abuse Act and summary judgment is warranted.

## III. Summary Judgment is Appropriate for Count IV – Violation of Florida Computer Crimes Act Because there is No Evidence that Defendant Aided and Abetted Unlawful Access to Plaintiff's Cell Phone

Similar to the aforementioned violations of the CFAA, the Florida Computer Crimes Act ("FCCA") also requires that Defendant and its agents/employees meet the requisite scienter requirements for a violation to be found. Similar to the CFAA, Defendant and its agents/employees do not meet the scienter requirements of the statute.

Florida Statute §815.06(2) entitled "Offenses against users of computers, computer systems, computer networks, and electronic devices" states, in relevant part, as follows:

> A person commits an offense against users of computers, computer systems, computer networks, or electronic devices if he or she **willfully, knowingly,**

**and without authorization or exceeding authorization**:

    (a)    Accesses or causes to be accessed any computer, computer system, computer network, or electronic device **with knowledge that such access is unauthorized or the manner or use exceeds authorization**;

    (b)    Disrupts or denies or causes the denial of the ability to transmit data to or from an authorized user of a computer, computer system, computer network, or electronic device, which, in whole or in part, is owned by, under contract to, or operated for, or on behalf of, or in conjunction with another;

Fla. Stat. §815.06(a-b) (2021) (emphasis added).

A court is charged with reading that mens rea "necessary to separate wrongful conduct from 'otherwise innocent conduct' into a statute." *Romero v. State*, 314 So.3d 699, 706 (Fla. 3d DCA 2021) (citing *Carter v. United States*, 530 U.S. 255, 269 (2000).

The record evidence demonstrates that Fort Meyers' store in question was closed on April 31, 2021 at approximately 8:45 p.m. The evidence demonstrates that Plaintiff does not know who actually accessed his cell phone SIM card. Plaintiff does not know who accessed his cryptocurrency accounts. Plaintiff does not know if the same person who accessed his SIM card also accessed his cryptocurrency accounts or benefited from the cryptocurrency allegedly stolen. The detectives that worked with Plaintiff could not identify the individual who

stole Plaintiff's cryptocurrency.

Plaintiff presents absolutely no evidence whatsoever that either Defendant or its employees willfully, knowingly, and without authorization or exceeding authorization accessed or caused to be accessed any computer, computer system, computer networking or electronic device with knowledge that the access was unauthorized as required under Fla. Stat. §815.06(a). Plaintiff presents absolutely no evidence whatsoever that either Defendant or its employees willfully, knowingly, and without authorization or exceeding authorization disrupted, denied, or caused the denial of the ability to transmit data to or from an authorized user of a computer, computer system, computer network, or electronic device as required under Fla. Stat. §815.06(b).

As Plaintiff has failed to present evidence supporting the elements of a violation of Florida Statute §815.06, summary judgment should be granted in favor of Defendant.

## IV. Summary Judgment is Appropriate for Count V - Negligence and VI - Negligent Training and Supervision As There Was No Duty, Breach, or Causation

Plaintiff has failed to present evidence that Defendant violated any legal duty owed to Plaintiff based on negligence or negligent training and even if a legal duty existed (it does not), Defendant fails to demonstrate that Defendant breached its duty causing the Plaintiff's theft of CPNI, which allegedly caused

Plaintiff's cryptocurrency to be stolen.  Likewise, Defendant fails to demonstrate that it breached its duty to supervise and train its employees to safeguard and protect Plaintiff's CPNI.

A negligence claim under Florida Law consists of four elements: (1) a duty recognized by law; (2) breach of the duty; (3) proximate causation; and (4) damages.  *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

Duty exists as a matter of law and is not a factual question for a jury to decide.  *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992).  Duty can arise from: 1) legislative enactment or administrative regulations; 2) judicial interpretation of such enactments or administrative regulations; 3) other judicial precedent; and 4) the general facts of the case.  *Id.* at 505 n. 2.  When considering whether the general facts of a case establish a duty, the focus is on "whether defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."  *Id.* at 502.  The requirement of reasonable, general foresight is the core of the duty element.  *Id.* at 503.  Importantly, to establish a duty, the zone of risk created by a defendant's conduct "**must have been reasonably foreseeable, not just possible**."  *Johnson v. Wal-Mart Stores East, LP*, 389 So.3d 705, 709-710 (Fla. 5th DCA 2024) (citing *Graham v. Langley*, 683 So.2d 1147, 1148 (Fla. 5th DCA 1996) (emphasis added).  Generally, a party's internal policy alone will not establish that the conduct in question creates a

reasonably foreseeable zone of risk. *Id.* at 712.

The causation element of negligence is specific to the cause and considers whether "prudent human foresight would leave one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *McCain*, 593 So.2d at 503. Proximate causation "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Id.* at 502. A person who has been negligent is not liable for the damages suffered by another when some separate force or action is "the active and efficient intervening cause," the "sole proximate cause," or an "independent cause." *Gibson v. Avis Rent-A-Car Sys., Inc.*, 386 So.2d 520, 522 (Fla. 1980).

The record evidence does not demonstrate that Defendant either owed a legal duty to Plaintiff or proximately cause the theft of Plaintiff's CPNI under a under a theory of either negligence or negligent training. The record evidence demonstrates the exact opposite – neither Defendant nor its employees were Negligent or negligently trained and/or supervised.

Defendant took security seriously and had robust security measures in place. Defendant's employees were educated by Defendant on CPNI and the importance of safeguarding same. There is no evidence in the record that Defendant's security protocols were insufficient or failed. The "zone of risk"

created by Defendant's alleged conduct of either having "inadequate security" (to which Defendant offers no definition or expert witness testimony to support) or failing to supervise and/or train employees to safeguard and protect Plaintiff's CPI and CPNI is absolutely not supported by the record evidence. Even if it were (it is not), the failures in security and/or employee supervision/training which allegedly lead to Defendant allowing for Plaintiff's CPI and CPNI being compromised (which allegedly lead to his cryptocurrency theft) must have been reasonably foreseeable, not just possible.

Not only does Plaintiff fail to articulate a duty owed by Defendant but it also fails to demonstrate how the breach of said duty proximately caused Plaintiff's CPI and CPNI to be compromised, which then allegedly lead to the theft of Plaintiff's cryptocurrency. In fact, the active and efficient intervening cause **was the hacker** who broke into T-Mobile's computer system (not Defendant's computer system) while Defendant's store was closed, caused a SIM-swap to occur, which *then* caused the hacker to allegedly gain control over Plaintiff's CPI and CPNI, which *then* allegedly lead to the theft of Plaintiff's cryptocurrency. Plaintiff fails to articulate exactly what part of the aforementioned sequence of events is reasonably foreseeable by Defendant at all when there is no evidence in the record, expert or otherwise, that Plaintiff fell below any standard of care or that Plaintiff's security measures were somehow

inadequate.

As Plaintiff cannot provide either a legal duty that Defendant or Defendant's employees owed to it or that Defendant proximately caused the loss experienced by Plaintiff, Plaintiff fails to satisfy the necessary elements of its causes of action and summary judgment as to both is warranted.

## V. Summary Judgment is Appropriate for Count VII – Civil Conspiracy as There is No Record Evidence of Defendant Participation in a Civil Conspiracy

There is no record evidence of Defendant participating in a civil conspiracy against Plaintiff – plain and simple.

Under Florida Law, a civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, **and** (d) damage to plaintiff as a result of the acts done under the conspiracy. *Phelan v. Lawhon*, 299 So.3d 853, 858 (Fla. 3d DCA 2017) (citing *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997) (emphasis added). The alleged conspiracy must demonstrate "an actionable underlying tort or wrong," and that independent tort or wrong must "constitute a cause of action if the wrong were done by one person." *Raimi*, 702 So.2d at 1284.

There is no record evidence to support the idea that an agreement was made between Defendant and "yet-unknown third-party thieves" to do an

unlawful act. There is no record evidence to demonstrate that Defendant and "yet-unknown third-party thieves" did an unlawful act. There is no record evidence to suggest some overt act in pursuance of the conspiracy. All four elements must be established for civil conspiracy and yet Plaintiff clearly cannot establish at least 3 of the 4 required elements to demonstrate a civil conspiracy. Summary Judgment must be granted in Defendant's favor under the circumstances.

## CONCLUSION

Plaintiff presents a novel and creative theory as to Defendant's involvement in its theft of CPI and CPNI data through the T-Mobile network. But Plaintiff did not sue T-Mobile in this action – Plaintiff sued an innocent cell-phone store and is attempting to attach liability to Defendant for its loss when all record evidence demonstrates that there is no liability to Defendant. Defendant has not made a sufficient showing that a jury could reasonably find in his favor. As such, summary judgment as to all counts in Plaintiff's Complaint is entirely appropriate.

**WHEREFORE**, Defendant, CELLULAR TOUCH WIRELESS, INC., respectfully requests that summary judgment against Plaintiff, WILLIAM ROSE, be granted as to all counts with final judgment entered in favor of Defendant, along with interest, costs, and attorney's fees.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 27, 2024, a copy of the foregoing was served by electronic mail to: counsel for Plaintiff, David C. Silver, Esq. and Jason S. Miller, Esq. at the following addresses: dsilver@silvermillerlaw.com and jmiller@silvermillerlaw.com.

Respectfully Submitted,

By: */s/ Sam Y. Badawi, Esq.*
SAM Y. BADAWI, ESQ.
FBN: 120218
BADAWI LAW
14505 University Point Place
Tampa, Florida 33613
Phone: (813) 508-8808
Fax: (813) 644-7152
Primary: Sam@badawilaw.com
Secondary: admin@badawilaw.com

*Attorney for Defendant*