# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

## Civil Action No. 2:23-cv-00022-JLB-KCD

WILLIAM ROSE, an individual,

      Plaintiff,

v.

CELLULAR TOUCH WIRELESS, INC., a Florida corporation;

      Defendant.

_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT CELLULAR TOUCH WIRELESS, INC.

Respectfully submitted,

DAVID C. SILVER
Florida Bar No. 572764
E-mail: DSilver@SilverMillerLaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail: JMiller@SilverMillerLaw.com
**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:  (954) 516-6000

*Counsel for Plaintiff William Rose*

Plaintiff WILLIAM ROSE, an individual (hereinafter "Plaintiff"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01, hereby moves this Honorable Court for entry of summary judgment in his favor and against Defendant CELLULAR TOUCH WIRELESS, INC., a Florida corporation ("Defendant" or "CTW"), on the claims specified herein that were asserted by Plaintiff in his Complaint for Damages and Equitable Relief.[1] As grounds therefor, Plaintiff states the following:

## I.    SUMMARY OF THE ARGUMENT

In August 2021, Plaintiff (a resident of Massachusetts) was an accountholder and subscriber with telecommunications carrier Metro by T-Mobile.  While he was in Ames, Iowa on August 13, 2021 celebrating at a family gathering, a Metro by T-Mobile Authorized Dealer store in Fort Myers, Florida owned and operated by Defendant allowed its unique computer login credentials to access Plaintiff's Metro account -- including the statutorily-protected personal identifying information contained therein -- and thereby transfer to a hacker control over Plaintiff's Metro telephone number and e-mail address, which led to the swift theft from Plaintiff of approximately Two Hundred Eighty Thousand Dollars ($280,000.00) in cryptocurrency assets.

Although Defendant asserts that its Fort Myers, Florida store was closed at the time the unauthorized account change (*i.e.*, SIM swap) was processed, the

---

[1] Docket Entry No. ("DE") 1.

store's computer login credentials were still used from a remote location to perform the SIM swap -- for which Defendant has no explanation. The person who made the unauthorized withdrawal of Plaintiff's cryptocurrency did so after using Defendant's computer log-in credentials that were supposed to be (but which were not adequately) secured by Defendant -- a failure by Defendant that served as a necessary cause in the continuous sequence of events that connect Defendant's breach of its statutory and common law obligations, Defendant's transfer of control over Plaintiff's telecommunications account to an unauthorized hacker, and the almost immediate theft thereafter of Plaintiff's cryptocurrency.

For violating the legal obligations inherent to its business operations, the duties thereby owed to Plaintiff, and for the harm it inflicted upon Plaintiff, summary judgment should be entered in Plaintiff's favor and against Defendant, imposing upon Defendant liability for the damages Plaintiff suffered.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOUMF")
### Plaintiff

1.    At all times relevant hereto, Plaintiff lived in Massachusetts and was an accountholder and subscriber with telecommunications carrier Metro by T-Mobile.[2]

2.    Among other things, Plaintiff's subscription with Metro by T-Mobile permitted Plaintiff to use his cellphone for the following -- all of which Plaintiff in fact did with his phone: make and receive telephone calls with people around the

---

[2] Declaration of William Rose ("Rose Decl.") (Dated: September 29, 2024) at ¶ 4, citing Complaint at ¶ 8. The Rose Decl. is attached hereto as **Exhibit "A"**.

world, send and receive text messages with people around the world, and access the internet and websites around the world through one or more web browsers.[3]

### Defendant is an Authorized Agent of Metro by T-Mobile

3.    Defendant is an authorized agent of Metro by T-Mobile.[4]

4.    Defendant operates as a Metro by T-Mobile Authorized Dealer under the Metro by T-Mobile brand.[5]

5.    Defendant operates a retail store at 3369 Dr. Martin Luther King Jr. Blvd. in Fort Myers, Florida.[6]

6.    The Fort Myers, Florida store is the store that was involved in the incident causing Plaintiff's damages.[7]

### Control Over an IMEI/SIM Card Allows Any Given User (even if an Unauthorized User) To Receive Text Messages Associated with a Metro by T-Mobile Customer's Mobile Telephone Number

7.    To activate a mobile device for use on cellular telephone networks, many devices are assigned a unique International Mobile Equipment Identity ("IMEI") number in combination with a unique Subscriber Identity Module ("SIM"), enclosed on a small removable chip or directly embedded into the mobile device.[8]

---

[3] *Id.*

[4] Defendant's Answer and Affirmative Defenses to Complaint ("Answ. to Compl.") [Docket Entry No. ("DE") 9] at ¶¶ 4, 9.

[5] *Id.*

[6] *Id.* at ¶ 9.

[7] Transcript of June 18, 2024 Deposition of Raslan "Ross" Shada ("June 2024 Shada Depo. Tr.") at Pg. 34: Lines 18-20, attached hereto as **Exhibit "B"**.

[8] DE 9 [Answ. to Compl.] at ¶ 26.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

8.    This IMEI/SIM combination -- when paired with a customer's mobile telephone number assigned by a telecommunications carrier -- allows a given user to authenticate on a mobile phone carrier's network to make and receive calls and text messages associated with the customer's mobile telephone number.[9]

### Statutorily-Protected CPNI Includes
### Text Messages, SIM Cards, and IMEI Numbers

9.    A text message is considered "CPNI" under the FCA.[10]

10.    A SIM card is considered "CPNI" under the FCA.[11]

11.    An IMEI number is considered "CPNI" under the FCA.[12]

12.    A customer would want to keep his text messages private between him and the person who is sending those messages.[13]

13.    A customer would expect that his text messages are private.[14]

### Defendant Was Aware of Breach of Confidential Metro by T-Mobile
### Customer Information in August 2021

14.    Metro by T-Mobile informed Defendant that confidential customer information had been hacked in or about August 2021.[15]

---

[9] *Id.*

[10] Exhibit "B" [June 2024 Shada Depo. Tr.] at Pg. 34: Lines 2-5.

[11] *Id.* at Pg. 54: Lines 3-5.

[12] *Id.* at Pg 54: Lines 6-7.

[13] *Id.* at Pg. 35: Lines 16-19.

[14] *Id.* at Pg. 35: Lines 20-22.

[15] Defendant's Initial Disclosures pursuant to Fed.R.Civ.P. 26(a)(1) at Section 1 (Dated: April 3, 2023) (**Exhibit "C"** hereto).  *See also*, Defendant's Response to Plaintiff's First Set of Interrogatories (Dated: August 4, 2023) at Interrogatory No. 2 (**Exhibit "D"** hereto).

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

15.    The following people (among others) were all aware of the confidential customer information breach[16]:

| Name | Title / Job Duty |
|------|------------------|
| Samer Mubarak | Owner of Cellular Touch Wireless |
| Raslan ("Ross") Shada | Vice President of Cellular Touch Wireless |
| Claribel Gonzalez | Employee of Cellular Touch Wireless |
| Octavio Alvarado | Employee of Cellular Touch Wireless |

### The August 2021 Breach of Plaintiff's Confidential Information and Related Theft of Plaintiff's Cryptocurrency Assets

16.    The incident in which Plaintiff's Confidential Information was breached occurred on August 13, 2021.[17]

17.    Plaintiff was with his wife in Ames, Iowa on August 13, 2021 celebrating her grandparents' 65th wedding anniversary -- thousands of miles away from Fort Myers, FL when the SIM card transfer was processed -- and he did not authorize the transfer.[18]

18.    Plaintiff is the only person who had physical access to his mobile phone on August 13, 2021.[19]

---

[16] Exhibit "C" [Defendant's Initial Disclosures].

[17] Exhibit "B" [June 2024 Shada Depo. Tr.] at Pg 32: Lines 1-9.

[18] Exhibit "A" [Rose Decl.] at ¶ 4, citing Complaint at ¶ 41.

[19] Plaintiff's Response to Defendant's Second Set of Interrogatories (Dated: June 30, 2024) at Interrogatory No. 1 (**Exhibit "E"** hereto).

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

19.     However, Defendant had remote, electronic access to Plaintiff's mobile phone that allowed an unknown and unauthorized person to take control over Plaintiff's phone (the SIM swap/hack) on or about that date.[20]

20.     To access the platform that allowed him/her to access and make changes to Plaintiff's Metro account, Defendant's employees -- at the time of the incident described in the Complaint -- would first log into the Real Time Point of Sale ("RTPOS") system.  Each employee had their own confidential username and password to that system.  Then the employee would log into a platform called EDGE using a store code and password.[21]

21.     The Operator ID/EDGE password uniquely assigned to Defendant's Fort Myers, Florida store (42002008) was used to process the device change (*i.e.*, SIM swap) on Plaintiff's cellphone.[22]

22.     The only two CTW employees who worked at the Fort Myers, Florida store on the date of the incident (August 13, 2021) were Claribel Gonzalez and Octavio Alvarado.[23]

---

[20] *Id.*

[21] Exhibit "D" [Defendant's Interrogatory Responses] at Interrogatory No. 7.

[22] Exhibit "B" [June 2024 Shada Depo. Tr.] at Pg. 35: Lines 7-14.  *See also*, CTW-000053 (**Exhibit "F"** hereto).

[23] Exhibit "B" [June 2024 Shada Depo. Tr.] at Pg. 38: Lines 9-13.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

23.    No one from CTW ever asked Octavio Alvarado if he had given away the Fort Myers, Florida store's password that provided access to the Metro by T-Mobile customer database entrusted to CTW.[24]

24.    CTW had no password controls in place to make sure employees did not give away the Fort Myers, Florida store's password.[25]

25.    Although Defendant asserts that its Fort Myers, Florida store was closed at the time the device change was processed, the store's computer login credentials were still used from a remote location to perform the SIM swap.[26]

26.    A John Doe hacker was able to remotely access CTW's computers, access the Metro by T-Mobile customer database (the "EDGE system") using the Fort Myers, Florida store's unique Operator ID login credential, and transfer/overtake Plaintiff's Metro account and cellphone -- for which Defendant had no explanation when asked about it at deposition.[27]

27.    As part of the SIM swap, Plaintiff's phone number and control over his Metro by T-Mobile account were assigned to a Metro accountholder other than Plaintiff.[28]

---

[24] *Id.* at Pg. 44: Lines 8-11.

[25] *Id.* at Pg. 44: Lines 20-22.

[26] *Id.* at Pg 32: Lines 1-9 (Ms. Gonzalez and Mr. Alvarado admit that the store was closed at the time of the incident when its computer systems were accessed remotely).

[27] *Id.* at Pg 49: Lines 1-8 and Pg. 56: Lines 4-15.

[28] Plaintiff's Response to Defendant's Second Request for Admissions (Dated: June 30, 2024) at Request No. 1 (**Exhibit "G"** hereto).

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

28.    Defendant permitted hackers to access Plaintiff's telephone number, telephone calls, text messages and account information.[29]

29.    In connection with Plaintiff's phone getting hacked, an unknown person(s) obtained the log-in information for, and thereby accessed, Plaintiff's cryptocurrency account.[30]

30.    Not only did Plaintiff suffer the theft of his identity and control over his SIM card and cellular telephone number, the unauthorized SIM card transfer produced a hack into his bank account and the theft of cryptocurrency he held.[31]

31.    The person who made the unauthorized withdrawal of Plaintiff's cryptocurrency did so after using Defendant's computer log-in credentials that were supposed to be (but which were not adequately) secured by Defendant.[32]

32.    In the aftermath of learning that his SIM card had been transferred without his authorization and that he had financial/cryptocurrency assets stolen from him, Plaintiff contacted Metro by T-Mobile to regain access over his SIM card and phone number and to obtain information on how the unauthorized SIM swap occurred.[33]

---

[29] Exhibit "A" [Rose Decl.] at ¶ 4, citing Complaint at ¶ 63.
[30] Exhibit "E" [Plaintiff's Response to Defendant's Second Set of Interrogatories] at Interrogatory Nos. 2-3.
[31] Exhibit "A" [Rose Decl.] at ¶ 4, citing Complaint at ¶ 42.
[32] Exhibit "G" [Plaintiff's Response to Defendant's Second Request for Admissions] at Request No. 1.
[33] Exhibit "A" [Rose Decl.] at ¶ 4, citing Complaint at ¶ 43.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

33.    At Plaintiff's insistence, Metro by T-Mobile changed the SIM card number back to Plaintiff's cellphone, restoring his phone service.[34]

34.    The Metro by T-Mobile telephone customer service representative with whom Plaintiff spoke confirmed for Plaintiff that his unauthorized SIM swap took place in a Metro by T-Mobile store and that it was a "malicious act"; however, despite Plaintiff's pointed inquiries seeking information about who processed the unauthorized SIM swap and at what retail store it took place, Metro by T-Mobile did not provide him that information.[35]

35.    Metro by T-Mobile updated the PIN/passcode previously enacted on Plaintiff's telephone account, told Plaintiff that he would be afforded the highest level of security on his account, and assured Plaintiff that no future unauthorized SIM transfers would be allowed.[36]

### Plaintiff Suffered Easily Quantifiable Damages

36.    At or about August 14, 2021 at 02:38 a.m. +UTC, John Doe withdrew from Plaintiff's MyEtherWallet account the following cryptocurrency assets without Plaintiff's knowledge or authorization, *to wit*:[37]

---

[34] *Id.* at ¶ 4, citing Complaint at ¶ 44.

[35] *Id.* at ¶ 4, citing Complaint at ¶ 45.

[36] *Id.* at ¶ 4, citing Complaint at ¶ 46.

[37] *Id.* at ¶ 4, citing Complaint at ¶ 49.  Valuation of the stolen funds/assets is calculated using market data compiled by www.CoinMarketCap.com, which takes the volume weighted average of all prices reported at several dozen cryptocurrency markets serving investors in the United States and abroad.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Civil Action No. 2:23-cv-00022-JLB-KCD

| Name: William Rose | | |
|---|---|---|
| **August 13, 2021 9:31 p.m.** | **T··Mobile** | **Unauthorized transfer of Mr. Rose's SIM card** |

| Date/Time of Cryptocurrency Theft | Cryptocurrency Assets Stolen | Location from which Assets were Stolen | Approximate Value of Funds/Assets Stolen as of Date of Theft [August 14, 2021] |
|---|---|---|---|
| August 14, 2021 2:38 a.m. +UTC | 1,800.6460144713 Quant (QNT) | MyEtherWallet | $280,414.60 |
| | | TOTAL | **$280,414.60** |

37.    As of the date on which they were taken from him, the 1,800.6460144713 QNT stolen from Plaintiff were valued at approximately Two Hundred Eight Thousand Dollars ($280,000.00).[38]

38.    Plaintiff has also learned that the IMEI used by the John Doe thief with whom Defendant coordinated the unauthorized transfer of Plaintiff's SIM card was used in numerous other SIM swaps at or about the same time as Plaintiff's SIM swap -- thus demonstrating that Plaintiff's harm was not an isolated incident and should have been flagged in, and prevented by, Defendant and Metro by T-Mobile's security systems.[39]

### Defendant Violated Its Own Policy Manual

39.    Defendant's Human Resources Protocol & Employee Policy Manual (Dated: August 20, 2020)[40] provides the following, *inter alia*:

---

[38] *Id.* at ¶ 4, citing Complaint at ¶ 50.

[39] *Id.* at ¶ 4, citing Complaint at ¶ 51.

[40] Attached as **Exhibit "H"** hereto.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Page 15 [CTW-001076]: "*Ethics and Conduct will serve as a guide to all of its employees, officers and directors. Cellular Touch Wireless's reputation, as well as its future success, is in the hands of its employees, officers, and directors. * * * Due to the high importance placed on this Code by Cellular Touch Wireless and the serious effects, which could result from the violation of its standards, individuals who violate this Policy will be subject to immediate discipline, which may include discharge, lawsuits, or other legal action. Accordingly, all Cellular Touch Wireless personnel must be familiar with and abide by the standards set forth in this entire Policy. It is the responsibility of each management-level employee to ensure compliance with the Policy by those employees under his or her supervision.*"

*       \*       \**

"*All Company personnel must comply with all laws, rules and regulations of any governmental agencies and authorities applicable to the Company or the conduct of its business. It is the personal responsibility of each employee, officer and director to adhere to and comply with those laws, rules and regulations applicable to his or her duties.*"

Page 17 [CTW-001078]: "*All Cellular Touch Wireless personnel should maintain the confidentiality of information entrusted to them by Cellular Touch Wireless, its business partners, suppliers, customers or others related to Cellular Touch Wireless's business. Such information must not be disclosed to anyone, including friends and family members, except when disclosure is authorized by Cellular Touch Wireless or legally mandated.*"

Page 19 [CTW-001080]: "*The primary responsibility for ensuring confidentiality of information remains with the [CTW] employees who are entrusted with the information.*"

Page 30 [CTW-001091]: "***Violation of the following rules will result in immediate termination of employment***:

*       \*       \**

- *Unauthorized disclosure of confidential/proprietary information, or confidential customer information.*"

- 11 -

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

40.     As noted above, the only two CTW employees who worked at that Fort Myers, Florida store on the date of the incident (August 13, 2021) were Claribel Gonzalez and Octavio Alvarado.[41]

41.     As of August 2021, when Defendant onboarded employees, Defendant did not do any background checks on those employees; and the employees did not go through any vetting process.[42]

42.     Octavio Alvarado left CTW on August 25, 2021, less than two weeks after Plaintiff's theft when Mr. Alvarado simply "no showed" for work.[43]

43.     CTW never interviewed either Claribel Gonzalez or Octavio Alvarado about the theft inflicted upon Plaintiff through that Fort Myers, Florida store after the theft occurred.[44]

### III.    <u>STANDARD OF REVIEW</u>

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[45]  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.[46]  The Court should not grant

---

[41] Exhibit "B" [June 2024 Shada Depo. Tr.] at Pg. 38: Lines 9-13.

[42] Transcript of January 9, 2024 Deposition of Raslan "Ross" Shada ("January 2024 Shada Depo. Tr.") at Pg. 15: Line 17 - Pg. 16: Line 3 (**Exhibit "I"** hereto).

[43] Exhibit "B" [June 2024 Shada Depo. Tr.] at Pg. 42: Line 25 - Page 43: Line 4 and Pg. 45: Lines 2-16.

[44] *Id.* at Pg. 38: Lines 16-23.

[45] Fed.R.Civ.P. 56(a).

[46] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

summary judgment unless it is clear that a trial is unnecessary[47], and any doubts in this regard should be resolved against the moving party.[48]

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[49]   To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.[50]

After the movant has met its burden under Rule 56(a), the burden of production shifts; and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[51] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[52]

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support

---

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[48] *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157 (1970).

[49] *Celotex Corp.*, 477 U.S. at 323.

[50] *Id.* at 325.

[51] *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[52] Fed.R.Civ.P. 56(c)(1)(A) and (B).

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

its claim.[53]  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."[54]  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."[55]

## IV.    LEGAL ARGUMENT
## COUNT I -- BREACH OF FEDERAL COMMUNICATIONS ACT
## [47 U.S.C. §§ 201, 206, 222]

At all times relevant hereto, Plaintiff (a Massachusetts resident) was an accountholder and subscriber with telecommunications carrier Metro by T-Mobile.  Among other things, Plaintiff's subscription with Metro by T-Mobile permitted Plaintiff to use his cellphone for the following -- all of which Plaintiff in fact did with his phone: make and receive telephone calls with people around the world, send and receive text messages with people around the world, and access the internet and websites around the world through one or more web browsers.[56]

Metro by T-Mobile is a "common carrier" engaging in interstate commerce by wire regulated by the Federal Communications Act ("FCA") and subject to the requirements, *inter alia*, of sections 201, 206, 207, and 222 of the FCA.  Defendant is an authorized agent of common carrier Metro by T-Mobile and, under section

---

[53] *Anderson*, 477 U.S. at 257.
[54] *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).
[55] *Anderson*, 477 U.S. 242, 249-50.
[56] Plaintiff's SOUMF at ¶¶ 1-2.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

217 of the FCA [47 U.S.C. § 217], is itself liable for adhering to the requirements of the FCA as well as its violations of the FCA.[57]

Section 201(b) of the FCA [47 U.S.C. § 201(b)] provides that it is "unlawful" for common carriers to engage in any "*practice . . . that is unjust or unreasonable.*" Under section 206 of the FCA [47 U.S.C. § 206]:

> In case any common carriers shall do, or cause or permit it to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

Additionally, Section 222(a) of the FCA [47 U.S.C. § 222(a)] requires every telecommunications carrier to protect, among other things, the confidentiality of proprietary information of, and relating to, customers ("legally protected personal information"). Section 222(c)(1) of the FCA [47 U.S.C. § 222(c)(1)] further requires that:

> Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to customer proprietary network information ['CPNI'] in its provision of (A) telecommunications services from which such information is derived, or (B) services necessary to or used in the provision of such telecommunication services . . . .

---

[57] Plaintiff's SOUMF at ¶¶ 3-6.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Furthermore, section 207 of the FCA [47 U.S.C. § 207] provides: "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter . . . ." It is well-established that a private right of action exists for victims like Plaintiff to pursue monetary relief for the harm inflicted upon them by common carriers in instances such as the one presented in this case.

As noted above, Sections 222(c)(1) and 217 of the FCA require Defendant to protect Plaintiff's legally protected personal information and CPNI from unauthorized use, disclosure, or access. A John Doe hacker, using Defendant's Fort Myers store's unique login credentials, obtained from Defendant the IMEI number and SIM card tied to Plaintiff's phone to assume control over Plaintiff's phone number and control over his Metro by T-Mobile account in carrying out the August 2021 SIM swap attack on Plaintiff.[58] Defendant's corporate representative conceded during his deposition that information disclosed to hackers by Defendant -- including the IMEI number and the SIM card number -- was indeed legally protected personal information and CPNI[59]; and that statutorily-protected information was used by the hacker without Plaintiff's authorization to control Plaintiff's telephone number, receive telephone calls, and receive private text

---

[58] Plaintiff's SOUMF at ¶¶ 21, 26, 27, 28, 31, 38.
[59] Plaintiff's SOUMF at ¶¶ 9-13.

messages that were intended for Plaintiff.[60]  That unauthorized use, which was empowered by Defendant's breach of its duties under the FCA, resulted in a hack into Plaintiff's bank account and the theft of cryptocurrency he held.[61]

Additionally, Defendant also employed unjust and unreasonable practices in violation of Section 201(b) by failing to adequately train and supervise its employees/agents, who are charged with upholding the requirements of the FCA to the same extent Metro by T-Mobile itself is.  While Defendant contends its Fort Myers store was closed at the time of the incident that spawned Plaintiff's harm[62], that did not prevent external access to Defendant's computer network and access to Plaintiff's legally protected personal information and CPNI -- something for which Defendant has no reasonable explanation and for which Defendant did not have reasonable practices in place to prevent such harm.[63]  The evidence shows that Defendant's protocols for securing legally protected personal information of Metro by T-Mobile customers like Plaintiff were inadequate and were not properly designed to prevent the precise type of harm that was inflicted upon Plaintiff.

As a result of the damages he suffered by Defendant's acts and omissions[64], Plaintiff brought Count I of the Complaint, for which the evidence demonstrates Defendant should be held liable.

---

[60] Plaintiff's SOUMF at ¶¶ 27, 28.

[61] Plaintiff's SOUMF at ¶¶ 29, 30, 32, 36-38.

[62] Plaintiff's SOUMF at ¶ 25.

[63] Plaintiff's SOUMF at ¶ 26.

[64] Plaintiff's SOUMF at ¶¶ 36, 37.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## COUNT IV – VIOLATION OF FLA. STAT. §§ 815.01, *et seq.*
### (FLORIDA COMPUTER CRIMES ACT)

Count IV of the Complaint asserts a claim against Defendant for violations of Fla. Stat. §§ 815.01, *et seq.* (the Florida Computer Crimes Act ["the Act"]) for aiding and abetting unlawful access to Plaintiff's Metro by T-Mobile cellphone and for disrupting and denying Plaintiff's Metro by T-Mobile service in a manner that allowed the theft of his cryptocurrency assets.

Fla. Stat. § 815.06 deems a person to have committed an offense under the Act if he/she/it, *inter alia*:

> (a) Accesses or causes to be accessed any computer, computer system, computer network, or electronic device with knowledge that such access is unauthorized . . . .
>
> (b) Disrupts or denies or causes the denial of the ability to transmit data to or from an authorized user of a computer, computer system, computer network, or electronic device, which, in whole or in part, is owned by, under contract to, or operated for, on behalf of, or in conjunction with another.

Furthermore, Fla. Stat. § 815.06 provides a civil right of action to someone aggrieved by a violation of any provision of the Act; and the aggrieved person is authorized to sue therefor and recover compensatory damages as well as reasonable attorneys' fees incurred.

In the instant matter, an unknown John Doe accessed -- and Defendant caused the John Doe to access -- and took control over Plaintiff's Metro by T-Mobile cellular telephone services (*i.e.*, his "computer services"[65]) as well as

---

[65] *See*, Fla. Stat. § 815.03(6).

prevented Plaintiff's authorized access to those same services and the Metro by T-Mobile "computer network"[66] -- as well as Plaintiff's use of his "electronic device"[67] (*i.e.*, his cellphone) -- during the critical time period in which the theft of Plaintiff's assets took place.[68]  Defendant materially fueled the theft by handing over to the unauthorized person Plaintiff's cellphone number, Plaintiff's password, an identifying code, Plaintiff's personal identification number, and other confidential information and control over Plaintiff's account.

To the extent Defendant did not commit primary violations of this statute, Defendant provided vital assistance and aided and abetted a violation of the statute by the unauthorized person -- who himself/herself did so knowingly and without authorization or without reasonable grounds to believe that he or she had such authorization to access Plaintiff's cellular telephone.

In short, Defendant provided the hacker with means to access Plaintiff's cellphone to steal nearly $280,000.00 worth of cryptocurrency from Plaintiff.[69] For that wrongful conduct, Defendant should be held liable for Plaintiff's losses.

## COUNT V – NEGLIGENCE

"A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct, (2) a breach by defendant of that duty, (3) a causal connection between the breach and injury to plaintiff, and (4) loss or damages to

---

[66] *See*, Fla. Stat. § 815.03(4)

[67] *See*, Fla. Stat. § 815.03(9).

[68] Plaintiff's SOUMF at ¶¶ 16-35.

[69] Plaintiff's SOUMF at ¶¶ 36, 37.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

plaintiff."[70]  Here, the evidence demonstrates that Plaintiff has satisfied each of those elements and that Defendant should be held liable for its negligence.

As an Authorized Dealer operating under the Metro by T-Mobile brand -- of which Plaintiff was an accountholder and subscriber -- Defendant owed a duty to Plaintiff to exercise reasonable care in safeguarding and protecting his legally protected personal information and keeping it from being compromised, stolen, misused or disclosed to unauthorized parties.  This duty included, among other things, designing and maintaining its security systems to ensure that Plaintiff's legally protected personal information was adequately secured and protected.

Defendant knew that Plaintiff's legally protected personal information was confidential and sensitive.  Indeed, Defendant acknowledged that in its Policy Manual.[71]  Defendant likewise knew of the substantial and foreseeable harms that could occur to customers like Plaintiff if Defendant did not place adequate security on legally protected personal information and did not follow its own security measures for Metro by T-Mobile customer accounts.  Defendant also knew that confidential Metro customer information had been hacked in or about August 2021 -- further exacerbating the need for Defendant to maintain proper security.[72]

Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's legally protected personal information by failing to adopt,

---

[70] *Bartsch v. Costello*, 170 So.3d 83, 86 (Fla. 4th DCA 2015).
[71] Plaintiff's SOUMF at ¶ 39.
[72] Plaintiff's SOUMF at ¶¶ 14, 15.

implement, and maintain adequate security measures to safeguard that information, including its duty under the FCA and its own Policy Manual. Defendant's failure to comply with federal and state requirements for security further evidences Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's legally protected personal information.

But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff, his legally protected personal information would not have been compromised, stolen, viewed, and used by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of Plaintiff's legally protected personal information and the legal cause of his resulting damages, including, but not limited to, the theft of approximately $280,000.00 worth of cryptocurrency.[73] The injury and harm suffered by Plaintiff was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's legally protected personal information.

As a result, Plaintiff is entitled to an award of damages against Defendant.

### COUNT VI – NEGLIGENT TRAINING AND SUPERVISION

To state a claim under Florida law for negligent hiring, supervision, [training] and/or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees. Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents. For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer. Accordingly, to state a claim, the

---

[73] Plaintiff's SOUMF at ¶¶ 36, 37.

> plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to the plaintiff.  The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.[74]

As explained below, Defendant's failure to properly train and supervise its employees caused Plaintiff -- precisely the type of victim Defendant reasonably foresaw as being at risk -- the harm he suffered when Defendant's Fort Myers store allowed the unauthorized takeover of Plaintiff's Metro by T-Mobile account and unauthorized control over Plaintiff's cellphone by an unknown John Doe.

Defendant owed Plaintiff a duty to exercise reasonable care in supervising and training its employees to safeguard and protect Plaintiff's legally protected personal information and to keep it from being compromised, lost, stolen, misused and/or disclosed to unauthorized parties.  Defendant acknowledged that responsibility throughout its Policy Manual, including in the following passages:[75]

> Page 15 [CTW-001076]: "*Ethics and Conduct will serve as a guide to all of its employees, officers and directors. Cellular Touch Wireless's reputation, as well as its future success, is in the hands of its employees, officers, and directors. \* \* \* **Due to the high importance placed on this Code by Cellular Touch Wireless and the serious effects, which could result from the violation of its standards**, individuals who violate this Policy will be subject to immediate discipline, which may include discharge, lawsuits, or other legal action. **Accordingly, all Cellular Touch Wireless personnel must be familiar with and abide by the standards set forth in this entire Policy. It is the responsibility of each management-level employee to***

---

[74] *Clary v. Armor Corr. Health Svcs., Inc.*, 6:13-CV-90-ORL-31KRS, 2014 WL 505126, at \*4 (M.D. Fla. Feb. 7, 2014) (internal citations omitted).

[75] Plaintiff's SOUMF at ¶ 39 (emphasis added).

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

*ensure compliance with the Policy by those employees under his or her supervision.*"

*        *        *

"*All Company personnel must comply with all laws, rules and regulations of any governmental agencies and authorities applicable to the Company or the conduct of its business. It is the personal responsibility of each employee, officer and director to adhere to and comply with those laws, rules and regulations applicable to his or her duties.*"

Defendant breached its duty to supervise and train its employees to safeguard and protect Plaintiff's legally protected personal information by not requiring them to adhere to their obligations under the FCA and other legal provisions. For example, Defendant had no password controls in place to make sure employees did not give away the Fort Myers store's password that allowed access to the Metro by T-Mobile EDGE platform (where customers' legally protected personal information resided and was purportedly safeguarded).[76] Moreover, no one from CTW ever asked Octavio Alvarado -- one of only two employees who worked at the Fort Myers store on the date of the incident leading to Plaintiff's harm -- if he had given away the store's password that provided access to the Metro by T-Mobile customer database entrusted to CTW.[77] In fact, Octavio Alvarado left CTW on August 25, 2021, less than two weeks after Plaintiff's theft when Mr. Alvarado simply "no showed" for work; and Defendant never interviewed either Claribel Gonzalez or Octavio Alvarado -- the two employees working at the store on August 13, 2021 -- about the theft inflicted upon Plaintiff

---

[76] Plaintiff's SOUMF at ¶ 24.

[77] Plaintiff's SOUMF at ¶¶ 22, 23, 40.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

through that Fort Myers store after the theft occurred.[78]  While Defendant's Policy Manual purports to strictly enforce its rules and adherence to all laws, rules, and regulations applicable to Defendant's business, Defendant did nothing in the face of "*Unauthorized disclosure of confidential/proprietary information, or confidential customer information*"[79] and let Octavio Alvarado disappear without even the briefest of inquiries less than two weeks after the violation of the FCA and exposure of Plaintiff's confidential customer information that led directly to the theft of Plaintiff's cryptocurrency assets.[80]

Defendant recognized that Plaintiff was in a foreseeable zone of risk if any of Defendant's employees failed to adhere to company standards and applicable laws and regulations.  Defendant's Policy Manual even emphasizes:

> "*All Cellular Touch Wireless personnel should maintain the confidentiality of information entrusted to them by Cellular Touch Wireless, its business partners, suppliers, customers or others related to Cellular Touch Wireless's business.*"
>
> \*            \*            \*
>
> "*The primary responsibility for ensuring confidentiality of information remains with the [CTW] employees who are entrusted with the information.*"

The reason for that emphasis is simple: Unauthorized disclosure of confidential customer information violates the FCA and would foreseeably result in harm to any customer whose legally protected personal information were to be disclosed to unauthorized persons.

---

[78] Plaintiff's SOUMF at ¶¶ 40-43.

[79] Plaintiff's SOUMF at ¶ 39.

[80] Plaintiff's SOUMF at ¶¶ 42, 43.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Moreover, Metro by T-Mobile had informed Defendant that confidential customer information had been hacked in or about August 2021 -- something that put Defendant on further alert that its customers were exposed to harm.[81]

Here, Defendant's failure to comply with the requirements of the FCA and related rules and regulations evidence Defendant's negligence in adequately supervising and monitoring its employees so that they would safeguard and protect legally protected personal information. But for Defendant's wrongful and negligent breach of its duties to supervise and monitor its employees, Plaintiff's legally protected personal information would not have been disclosed to unauthorized individuals through SIM swap fraud; and Plaintiff would not have suffered his resulting damages, including, but not limited to, the theft of approximately $280,000.00 worth of cryptocurrency.[82]

As a result, Plaintiff is entitled to compensatory damages if not also punitive damages against Defendant.

## V.    <u>CONCLUSION</u>

WHEREFORE, Plaintiff WILLIAM ROSE respectfully requests the Court enter an Order:

(a) Entering in Plaintiff's favor, without the need for a trial, a judgment against Defendant CELLULAR TOUCH WIRELESS, INC. on Counts I, IV, V, and VI of Plaintiff's Complaint; and

(b) granting such other relief as the Court deems just and appropriate.

---

[81] Plaintiff's SOUMF at ¶¶ 14-15.

[82] Plaintiff's SOUMF at ¶¶ 36, 37.

Civil Action No. 2:23-cv-00022-JLB-KCD

Respectfully submitted,

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:  (954) 516-6000

By: _/s/ David C. Silver_____
        DAVID C. SILVER
        Florida Bar No. 572764
        E-mail: DSilver@SilverMillerLaw.com
        JASON S. MILLER
        Florida Bar No. 072206
        E-mail: JMiller@SilverMillerLaw.com

        *Counsel for Plaintiff William Rose*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the foregoing document was electronically filed this __29th__ day of September 2024 using the CM/ECF filing system, which will send electronic notice of filing to the following CM/ECF participant(s): **SAM BADAWI, ESQ.**, BADAWI LAW, *Counsel for Defendant Cellular Touch Wireless, Inc.*, 14505 University Point Place, Tampa, Florida 33613, E-mail: Sam@BadawiLaw.com.

    _/s/ David C. Silver_____
        DAVID C. SILVER