UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM ROSE,
an individual,

    Plaintiff,

vs.                          CASE NO: 2:23-cv-00022-JLB-KCD

CELLULAR TOUCH WIRELESS, INC.,
a Florida Corporation,

    Defendant.
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, CELLULAR TOUCH WIRELESS, INC., by and through the undersigned counsel and pursuant to Fed.R.Civ.P. 56 and Local Rule 3.01, hereby responds to Plaintiff's Motion for Partial Summary Judgment and states as follows:

### SUMMARY OF THE ARGUMENT

Plaintiff has moved for summary judgment on Counts I, IV, V, and VI ("Plaintiff's Partial MSJ") based on its belief that Defendant, a cell phone retailer who owed a store located in Fort Meyers, FL, bears complete responsibility for an alleged SIM card "swap," which allegedly lead to the theft of Plaintiff's identifying information, which then allegedly lead to the theft of Plaintiff's cryptocurrency on or about August 14, 2021 while Plaintiff was in Ames, Iowa (the "Incident").

Plaintiff's first theory of the case appears to be based on Defendant's retail employees allegedly aiding and abetted a "John Doe" to remotely access T-Mobile's

EDGE network, causing Plaintiff's identifying information to be stolen, that then supposedly allow the "John Doe" to access Plaintiff's cryptocurrency assets. Plaintiff has presented to this Court absolutely no evidence of same as none exists and all evidence shows that Defendant's employees were not even in the retail store at the time of Plaintiff's alleged T-Mobile account breach.

Plaintiff then switches its theory to a nebulous idea that Plaintiff's account with T-Mobile, Inc. (not a party to this action) was compromised via remote access to T-Mobile, Inc.'s software through Defendant's storefront computer and that Defendant was somehow responsible for this occurring as well. Again, Plaintiff has not provided any evidence supporting Defendant's responsibility for same as the EDGE program is maintained and operated by T-Mobile, who is not a party to this action.

Assigning any responsibility to a cell phone retailer whose employees were not even on the retail premises at the time of the alleged security breach is not supported by the evidence on record. Plaintiff's theory of the case is just that – a theory, completely unsupported by record evidence. Defendant is respectfully requesting that Plaintiff's Motion for Partial Summary Judgment be denied in its entirety and Plaintiff's Motion for Final Summary Judgment, previously filed, be granted.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOUMF")

1. Defendant admits paragraph 1.

2. Defendant admits paragraph 2.

3. Defendant denies paragraph 3. Defendant only admitted to being an authorized

dealer who operates retail store locations in Florida under the brand of cellular telecommunications provider Metro by T-Mobile. [Docket Entry No. ("DE") 9] at ¶¶ 4, 9. Shada Amend. Aff., Ex. 1 at par. 15.

4. Defendant admits paragraph 4.

5. Defendant admits paragraph 5.

6. Defendant denies paragraph 6. While it agrees that the Fort Meyers, Florida store is the store that was involved in the Incident, Defendant denies that it has any involvement in causing Plaintiff's damages (i.e. theft of cryptocurrency). Shada Amend. Aff., Ex. 1 at par. 14.

7. Defendant admits paragraph 7.

8. Defendant admits paragraph 8.

9. Defendant denies and objects to paragraph 9. While it agrees that a text message is considered "CPNI," Plaintiff has presented no evidence to the Court, expert testimony, or otherwise that a text message is considered "CPNI" under the FCA.

10. Defendant denies and objects to paragraph 10. While it agrees that a SIM card is considered "CPNI," Plaintiff has presented no evidence to the Court, expert testimony, or otherwise that a SIM card is considered "CPNI" under the FCA.

11. Defendant denies and objects to paragraph 11. While it agrees that an IMEI number is considered "CPNI," Plaintiff has presented no evidence to the Court, expert testimony, or otherwise than an IMEI is considered "CPNI" under the FCA.

12. Defendant admits paragraph 12.

13. Defendant admits paragraph 13.

14. Defendant admits paragraph 14.

15. Defendant denies and objects to paragraph 15.  Witness disclosures are not evidence and Plaintiff has provided no evidentiary basis supporting admissibility of Defendant's Initial Disclosures, let alone evidence that would support that these individuals were "all aware of the confidential customer information breach."

16. Defendant Admits paragraph 16.

17. Defendant Admits paragraph 17.

18. Defendant Admits paragraph 18.

19. Defendant denies paragraph 19. Defendant did not have remote access to Plaintiff's Mobile phone as there was no remote login capacity.  Deposition of Shada Ex. 2 at 40, 10-12; at 46-47, lines 15-2.; at 47, lines 13-15; at 56, lines 10-15; at 48, lines 11-22; at 49, lines 22-25; at 55-56, lines 23-3.

20. Defendant admits paragraph 20.

21. Defendant admits paragraph 21.

22. Defendant admits paragraph 22.

23. Defendant admits paragraph 23.

24. Defendant admits paragraph 24.

25. Defendant denies paragraph 25 as Plaintiff has not cited to record evidence supporting that the "store's computer login credentials were still used from a remote location to perform the SIM swap."  The testimony that Plaintiff cites to its Partial Motion for Summary Judgment, Shada Dep, Ex. B at 32, line 1-9, only

confirms the date of the Incident and does not provide any support for Plaintiff's factual assertions.

26. Defendant denies paragraph 26. There is no evidence that a John Doe hacker remotely accessed *Defendant's* in-store computers because there was no remote login capacity for Defendant's in-store computers. There is only evidence that suggests that the "EDGE system" maintained by T-Mobile was accessed using the Operator ID. Shada Amend. Aff., Ex. 1 at par. 9-14; Deposition of Shada Ex. 2 at 40, 10-12; at 46-47, lines 15-2.; at 47, lines 13-15; at 56, lines 10-15; at 48, lines 11-22; at 49, lines 22-25; at 55-56, lines 23-3.

27. Defendant denies paragraph 27. Plaintiff does not know who actually accessed his cell phone's SIM card. Deposition of Rose, Ex. 3 at 84, lines 8-10. Plaintiff also does not know if the same person who accessed his SIM card also accessed his cryptocurrency accounts. Deposition of Rose, Ex. 3 at 84, lines 14-17.

28. Defendant denies paragraph 28. There is no evidence that Defendant "permitted hackers to access Plaintiff's telephone number, telephone calls, text messages and account information." There is no evidence to suggest any involvement of any employees of Defendant in the Incident. Shada Aff., Ex. 1 at par. 9-14. There was no remote login capacity for Defendant's in-store computers – only that the Fort Meyers, Florida store's unique Operator ID login credential was used in effectuating the Incident. There is only evidence that suggests that the "EDGE system" maintained by T-Mobile was accessed using the Operator ID. Deposition of Shada Ex. 2 at 40, 10-12; at 46-47, lines 15-2.; at 47, lines 13-15; at 56, lines 10-

15; at 48, lines 11-22; at 49, lines 22-25; at 55-56, lines 23-3.

29. Defendant admits paragraph 29.

30. Defendant admits paragraph 30.

31. Defendant denies paragraph 31. In August of 2021, Defendant had robust security. Deposition of Shada, Ex. 2 at 33, lines 22-23; at 54, lines 8-10. There is only evidence that suggests that the "EDGE system" maintained by T-Mobile was accessed, of which Defendant has no control over and there is no evidence to suggest that any of Defendant's employees were involved in the Incident. Shada Amend. Aff., Ex. 1 at par. 9-14.

32. Defendant admits paragraph 32.

33. Defendant admits paragraph 33.

34. Defendant denies paragraph 34. There is no evidence that the "unauthorized SIM swap took place in a Metro by T-Mobile store." There is only evidence that suggests that the "EDGE system" maintained by T-Mobile was accessed. Shada Amend. Aff., Ex. 1 at par. 9-14; Deposition of Shada Ex. 2 at 40, 10-12; at 46-47, lines 15-2.; at 47, lines 13-15; at 56, lines 10-15; at 48, lines 11-22; at 49, lines 22-25; at 55-56, lines 23-3.

35. Defendant admits paragraph 35.

36. Defendant admits paragraph 36.

37. Defendant admits paragraph 37.

38. Defendant denies paragraph 38 and objects to same. Plaintiff's allegation is hearsay as it is a written assertion contained in an affidavit and is offered to prove

the truth of the matter asserted.  Fed. R. Evid. 801.  Plaintiff provides no record evidence that the "IMEI used by the John Doe thief with whom Defendant coordinated the unauthorized transfer of Plaintiff's SIM card was used in numerous other SIM swaps at or about the same time as Plaintiff's SIM swap." Plaintiff cites to no record evidence specifically identifying other instances in which Defendant's IMEI was used in a SIM swap, does not provide any identifying information as to any other alleged similar instances (such as customer names, identification numbers, dates, incident reports, etc.), and does not explain the basis for its alleged knowledge regarding other instances.

39. Defendant admits paragraph 39.

40. Defendant admits paragraph 40.

41. Defendant denies paragraph 41.  Employees did not receive background checks who were "onboarded" because most of the employees came with store acquisitions.  Deposition of Shada, Exhibit I to Plaintiff's Motion for Partial Summary Judgment [Document 45-9] at 15, lines 17-20.

42. Defendant admits paragraph 42.

43. Defendant admits paragraph 43.

## ADDITIONAL MATERIAL FACTS ("AMF")

44. The two computers for the Fort Meyers store and all of the software contained on those computers were sourced from T-Mobile.  Deposition of Shada, Ex. 2 at 35-36, lines 23-1; at 36, lines 15-16.

45. In August of 2021, Defendant took security seriously and had robust security.

Deposition of Shada, Ex. 2 at 33, lines 19-23; at 54, lines 8-18.

46. Defendant's employees, Octavio and Clarabel, were educated by Defendant on Customer Proprietary Network Information ("CPNI") and this was part of their onboarding and T-Mobile training. Deposition of Shada, Ex. 2 at 49, lines 11-19.

47. William Rose' T-Mobile transaction record from his customer account shows that his SIM card was swapped on August 13, 2021 at 21:31 CST, which is 10:31 P.M. EST. Shada Amend. Aff., Ex. 1, at par. 9. A true and correct copy of Mr. Rose' T-Mobile transaction record from the T-Mobile EDGE system is attached to the amended affidavit of Mr. Shada, Ex. 1, as Exhibit "A."

48. The SIM card number search in Cellular Touch Wireless, Inc. inventory shows that the SIM card at issue did not come from Defendant's SIM card inventory. Shada Amend. Aff., Ex. 1 at par. 10. A true and correct copy of the search results from Defendant's inventory for Mr. Rose' SIM card number is attached to the amended affidavit of Mr. Shada, Ex. 1, as Exhibit "B."

49. The time clock for Defendant's two employees (Claribel Gonzalez and Octavio Alvarado) at the Fort Meyers Store on August 13, 2021 shows that both employees were clocked out of the Fort Meyers Store by 8:34 P.M. EST. Shada Amend. Aff., Ex. 1 at par. 11. A true and correct copy of the record for Cellular Touch Wireless, Inc.'s time clock for both employees is attached to the amended affidavit of Mr. Shada, Ex. 1, as Exhibit "C."

50. At 8:34 P.M. on August 13, 2021, the Fort Meyers Store was closed, the alarm was armed, and Cellular Touch Wireless, Inc. did not receive any report of the

alarm being set off or disarmed. Shada Amend. Aff., Ex. 1 at par. 12. A true and correct copy of the record for the Fort Meyers Store alarm is attached to the amended affidavit of Mr. Shada, Ex. 1, as Exhibit "D."

51. The EDGE system is a program that is maintained and operated by T-Mobile. Cellular Touch Wireless, Inc. has no control over the operation and maintenance of T-Mobile's EDGE system. Shada Amend. Aff., Ex. 1 at par. 13.

52. There was no remote login capacity for the computers at the Fort Meyers store around the time of the Incident. Deposition of Shada, Ex. 2 at 39, lines 10-21.

53. Defendant never used default passwords that were provided by T-Mobile for their in-store computer systems. Deposition Shada, Ex. 2 at 44, lines 3-7.

54. An individual could not login remotely to the T-Mobile EDGE software website utilizing a store password remotely because of the in-store location certificates. Deposition of Shada, Ex. 2 at 46-47, lines 15-2.

55. An individual could not login to a specific store's EDGE software from a different location based on the requirement of presenting the in-store certificate. Deposition of Shada, Ex. 2 at 47, lines 13-15; at 56, lines 10-15.

56. Whenever an in-store employee of Defendant called T-Mobile for anything EDGE software related, T-Mobile would ask for the EDGE certificate. Deposition of Shada, Ex. 2 at 47-28, lines 23-1.

57. In August of 2021, an EDGE certificate created a geo-regional block that did not allow anybody to login to a specific in-store location even if they were at a different Metro by T-Mobile store. Deposition of Shada, Ex. 2 at 48, lines 11-22.

58. There was no ability to "remote in" to an in-store computer unless a person was in the store physically. Deposition of Shada, Ex. 2 at 49, lines 22-25; at 55-56, lines 23-3.

59. The T-Mobile operator ID 42002008 was not used physically at the Fort Meyers' store location and Plaintiff agrees that it appears that it was not. Deposition of Shada, Ex. 2 at 49, lines 1-14.

60. Plaintiff does not know who actually accessed his cell phone's SIM card. Deposition of Rose, Ex. 3 at 84, lines 8-10.

61. Plaintiff does not know who actually accessed his cryptocurrency accounts. Deposition of Rose, Ex. 3 at 84, lines 11-13.

62. Plaintiff does not know if the same person who accessed his SIM card also accessed his cryptocurrency accounts. Deposition of Rose, Ex. 3 at 84, lines 14-17.

63. Plaintiff does not know who the person is that ended up benefiting from his cryptocurrency that was stolen. Deposition of Rose, Ex. 3 at 84, lines 18-21.

64. The detectives that Plaintiff worked with after reporting the alleged theft of his cryptocurrency could not identify the individual who stole the cryptocurrency. Deposition of Rose, Ex. 3 at 86, lines 3-8.

65. Plaintiff read on the internet that there was a data breach through T-Mobile on the same days that his cryptocurrency loss occurred. Deposition of Rose, Ex. 3 at 90, lines 21-25.

66. Mr. Shada has seen no evidence indicating that any employee and/or agent of

Cellular Touch Wireless, Inc. was involved in the Incident. Shada Amend. Aff., Ex. 1 par. 14.

67. Cellular Touch Wireless, Inc. is a cell phone retailer that owns and operates retail cell phone stores. It does not operate a wireless cell phone network. Cellular Touch Wireless, Inc. does not offer the transmission between or among points specified by the user of information of the user's choosing, without change in the form or content of the information as sent and received. Shada Amend. Aff., Ex. 1, par. 15.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56. "A genuine issue of material fact exists where the dispute is "over facts that might affect the outcome of the suit under the governing law" and where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Code Revision Comm'n for Gen. Assembly of Georgia v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1235 (11th Cir. 2018); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## MEMORANDUM OF LAW

I. **Granting Summary Judgment to Plaintiff is Not Appropriate for Count I – Breach of Federal Communications Act Because Defendant is Neither a "Telecommunications Carrier" Nor Failed to Protect Information**

Plaintiff cannot establish the necessary elements of a violation of the Federal Communications Act for summary judgment purposes as Defendant is not a

Telecommunications Carrier as contemplated under the act. Moreover, Plaintiff has no evidence that Defendant either divulged any information to "hackers" or failed to follow security procedures.

First, Count I of Plaintiff's Complaint is based on an alleged violation of the Federal Communications Act, 47 U.S.C. §§206, 222 and is based upon a theory that Defendant, as an agent of T-Mobile, Inc. under 47 U.S.C §217, constitutes a "common carrier" as defined by 47 U.S.C. §153(11) as well as a telecommunications carrier as defined by 47 U.S.C. §153(51).

A "common carrier" is defined under the Federal Communications Act as follows:

> The term "common carrier" or "carrier" means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier.

47 U.S.C. §153(11).

In contrast, a "telecommunications carrier" is separately defined under the Federal Communications Act as follows:

> The term "telecommunications carrier" means any provider of telecommunications services, except that such term does not include aggregators of telecommunications services (as defined in section 222 of this title). **A telecommunications carrier shall be treated as a common carrier under this chapter only to the extent that it is engaged in providing telecommunication services**, except that the Commission shall determined whether the provision of fixed and mobile satellite service shall be treated as common carriage.

47 U.S.C. §153(51) (emphasis added).

The term "telecommunications service" is defined under the Federal Communications Act as follows:

> The term "telecommunications service" means the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used.

47 U.S.C. §153(53).

The term "telecommunications" is defined under the Federal Communications Act as follows:

> The term "telecommunications" means the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received.

47 U.S.C. §153(50).

A "telecommunications carrier" is only treated as a common carrier under the FCA "to the extent that it is engaged in providing telecommunication services." 47 U.S.C. §153(51). Telecommunication services involve offering telecommunication for a fee directly to the public. 47 U.S.C. §153(53). Telecommunications means the transmission of information of the user's choosing without change in the form or content of the information. 47 U.S.C. §153(50).

When Congress enacts a definition of a term, the statutory definition controls over definitions in general dictionaries. *Robinson v. C.I.R.*, 119 T.C. 44, 56 (2002). Every one of the aforementioned definitions perfectly describes the business of T-Mobile, Inc., who is not a party to this lawsuit.

Defendant is not a "telecommunications carrier" that offers telecommunications ("the transmission, between or among points specified by the user, of information of the user's choosing") for a fee directly to the public. AMF par. 67. A person who purchases a phone from Defendant does not connect to the "Cellular Touch Wireless Inc." network for telecommunication purposes. Rather, a person who purchases a phone from Defendant may connect to the T-Mobile, Inc. common carrier network for telecommunications. Section 222(a) and (c)(1) of the FCA speak specifically to "telecommunication carriers," not "common carriers" and, by definition, Defendant, a cell-phone retailer is not a telecommunication carrier.

Second, Plaintiff has provided no evidence demonstrating that Defendant either failed to protect the confidentiality of proprietary information of customers or that Defendant allowed for unauthorized access to customer proprietary network information either in its provision of telecommunications services or in services necessary in the provision of telecommunication services as required for a violation of either 47 U.S.C. §222(a) and (c)(1).

In fact, the record evidence clearly demonstrates the exact opposite - Defendant took security seriously and had robust security. AMF par. 45. Defendant's employees were educated by Defendant on CPNI and the importance of safeguarding same. AMF par. 46. There is no evidence in the record that Defendant's security protocols were insufficient or failed. Once again, both of the computers at the Fort Meyers' store were sourced from T-Mobile and contained T-Mobile's software (EDGE). AMF par. 44. Plaintiff admits that there was a data breach through T-Mobile – not a data breach of

Defendant – on the same days that his cryptocurrency loss occurred. AMF par. 65.

Defendant is not a telecommunications carrier under the FCA. Even if it were (it is not), Defendant still cannot establish Defendant's failure to protect customer CPNI or that it was Defendant's failure of security that allowed for unauthorized access to CPNI. As Defendant's cause of action does not satisfy the statutory definitions under the FCA for a violation or that any violation occurred based on the record evidence, summary judgment as to Count I cannot be granted to Plaintiff.

**II.** **Summary Judgment for Plaintiff is Not Appropriate for Count IV – Violation of Florida Computer Crimes Act Because there is No Evidence that Defendant Aided and Abetted Unlawful Access to Plaintiff's Cell Phone**

The Florida Computer Crimes Act ("FCCA") requires that Defendant and its agents/employees meet the requisite scienter requirements for a violation to be found. Defendant and its agents/employees do not meet the scienter requirements.

Florida Statute §815.06(2) entitled "Offenses against users of computers, computer systems, computer networks, and electronic devices" states as follows:

> A person commits an offense against users of computers, computer systems, computer networks, or electronic devices if he or she **willfully, knowingly, and without authorization or exceeding authorization**:
>
> (a) Accesses or causes to be accessed any computer, computer system, computer network, or electronic device **with knowledge that such access is unauthorized or the manner or use exceeds authorization**;
>
> (b) Disrupts or denies or causes the denial of the ability to transmit data to or from an authorized user of a computer, computer system, computer network, or electronic device, which, in whole or in part, is owned by, under contract to, or operated for, or on behalf of, or in

conjunction with another;

Fla. Stat. §815.06(a-b) (2021) (emphasis added).

A court is charged with reading that mens rea "necessary to separate wrongful conduct from 'otherwise innocent conduct' into a statute." *Romero v. State*, 314 So.3d 699, 706 (Fla. 3d DCA 2021) (citing *Carter v. United States*, 530 U.S. 255, 269 (2000).

The record evidence demonstrates that Fort Meyers' store in question was closed on August 13, 2021 at approximately 8:34 P.M. AMF par. 50. The evidence demonstrates that Plaintiff does not know who actually accessed his cell phone SIM card. AMF par. 60. Plaintiff does not know who accessed his cryptocurrency accounts. AMF par. 61. Plaintiff does not know if the same person who accessed his SIM card also accessed his cryptocurrency accounts or benefited from the cryptocurrency allegedly stolen. AMF par. 62 The detectives could not identify the individual who stole Plaintiff's cryptocurrency. AMF par. 63.

Plaintiff presents absolutely no evidence whatsoever that either Defendant or its employees willfully, knowingly, and without authorization or exceeding authorization accessed or caused to be accessed any computer, computer system, computer networking or electronic device with knowledge that the access was unauthorized as required under Fla. Stat. §815.06(a). Plaintiff presents absolutely no evidence whatsoever that either Defendant or its employees willfully, knowingly, and without authorization or exceeding authorization disrupted, denied, or caused the denial of the ability to transmit data to or from an authorized user of a computer, computer system, computer network, or electronic device as required under Fla. Stat. §815.06(b).

As Plaintiff has failed to present evidence supporting the elements of a violation of Florida Statute §815.06, summary judgment should be denied to Plaintiff.

### III. Summary Judgment in Plaintiff's Favor is Inappropriate for Count V - Negligence and VI - Negligent Training and Supervision As There Was No Duty, Breach, or Causation

Plaintiff has failed to present evidence that Defendant violated any legal duty owed to Plaintiff based on negligence or negligent training and even if a legal duty existed (it does not), Defendant fails to demonstrate that Defendant breached its duty causing the Plaintiff's theft of CPNI, which allegedly caused Plaintiff's cryptocurrency to be stolen. Likewise, Defendant fails to demonstrate that it breached its duty to supervise and train its employees to safeguard and protect Plaintiff's CPNI.

A negligence claim under Florida Law consists of four elements: (1) a duty recognized by law; (2) breach of the duty; (3) proximate causation; and (4) damages. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

Duty exists as a matter of law and is not a factual question for a jury to decide. *McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992). Duty can arise from: 1) legislative enactment or administrative regulations; 2) judicial interpretation of such enactments or administrative regulations; 3) other judicial precedent; and 4) the general facts of the case. *Id.* at 505 n. 2. When considering whether the general facts of a case establish a duty, the focus is on "whether defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* at 502. The requirement of reasonable, general foresight is the core of the duty element. *Id.* at 503. Importantly, to establish a duty, the zone of risk created by a defendant's

conduct "**must have been reasonably foreseeable, not just possible**." *Johnson v. Wal-Mart Stores East, LP*, 389 So.3d 705, 709-710 (Fla. 5th DCA 2024) (citing *Graham v. Langley*, 683 So.2d 1147, 1148 (Fla. 5th DCA 1996) (emphasis added). **Generally, a party's internal policy alone will not establish that the conduct in question creates a reasonably foreseeable zone of risk**. *Id.* at 712. (emphasis added).

The causation element of negligence is specific to the cause and considers whether "prudent human foresight would leave one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *McCain*, 593 So.2d at 503. Proximate causation "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Id.* at 502. A person who has been negligent is not liable for the damages suffered by another when some separate force or action is "the active and efficient intervening cause," the "sole proximate cause," or an "independent cause." *Gibson v. Avis Rent-A-Car Sys., Inc.*, 386 So.2d 520, 522 (Fla. 1980).

The record evidence does not demonstrate that Defendant either owed a legal duty to Plaintiff or proximately cause the theft of Plaintiff's CPNI under a under a theory of either negligence or negligent training. The record evidence demonstrates the exact opposite – neither Defendant nor its employees were negligent or negligently trained and/or supervised.

Defendant took security seriously and had robust security measures in place. AMF par. 45. Defendant's employees were educated by Defendant on CPNI and the

importance of safeguarding same. AMF par. 46. There is no evidence in the record that Defendant's security protocols were insufficient or failed. The "zone of risk" created by Defendant's alleged conduct of either having "inadequate security" (to which Defendant offers no definition or expert witness testimony to support) or failing to supervise and/or train employees to safeguard and protect Plaintiff's CPI and CPNI is absolutely not supported by the record evidence. AMF par. 46.

Even if it were (it is not), the failures in security and/or employee supervision/training which allegedly lead to Defendant allowing for Plaintiff's CPI and CPNI being compromised (which allegedly lead to his cryptocurrency theft) must have been reasonably foreseeable, not just possible. Moreover, the internal policies/procedures that Plaintiff cites to in Exhibit "H," Page 15 of the Policy Manual do not demonstrate a protocol deviation. Regardless, a violation would still be insufficient under the law to create liability for Defendant.

Not only does Plaintiff fail to articulate a duty owed by Defendant but it also fails to demonstrate how the breach of said duty proximately caused Plaintiff's CPI and CPNI to be compromised, which then allegedly lead to the theft of Plaintiff's cryptocurrency. In fact, the active and efficient intervening cause **was the hacker** who broke into T-Mobile's computer system (not Defendant's computer system) while Defendant's store was closed, caused a SIM-swap to occur, which *then* caused the hacker to allegedly gain control over Plaintiff's CPI and CPNI, which *then* allegedly lead to the theft of Plaintiff's cryptocurrency. Plaintiff fails to articulate exactly what part of the aforementioned sequence of events is reasonably foreseeable by Defendant

or the Defendant's responsibility at all when there is no evidence in the record, expert testimony, or otherwise that Plaintiff fell below any standard of care or that Plaintiff's security measures were somehow inadequate.

As Plaintiff cannot provide either a legal duty that Defendant or Defendant's employees owed to it or that Defendant proximately caused the loss experienced by Plaintiff, Plaintiff fails to satisfy the necessary elements of its causes of action and summary judgment as to Plaintiff's motion must be denied accordingly.

**WHEREFORE**, Defendant respectfully requests that Plaintiff's Motion for Summary Judgment be denied in its entirety.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 17, 2024, a copy of the foregoing was served by electronic mail to: counsel for Plaintiff, David C. Silver, Esq. and Jason S. Miller, Esq. at the following addresses: dsilver@silvermillerlaw.com and jmiller@silvermillerlaw.com.

Respectfully Submitted,

By: */s/ Sam Y. Badawi, Esq.*
SAM Y. BADAWI, ESQ.
FBN: 120218
BADAWI LAW
14505 University Point PlaceTampa, Florida 33613
Phone: (813) 508-8808
Fax: (813) 644-7152
Primary: Sam@badawilaw.com
Secondary: admin@badawilaw.com
*Attorney for Defendant*